In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2437

JULIE MCARDLE,

*Plaintiff-Appellant*,

*v.*

PEORIA SCHOOL DISTRICT NO. 150,
an Illinois Local Governmental Entity,
and MARY DAVIS, Academic Officer of
Peoria School District No. 150, in her
Individual Capacity,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09 CV 1150—**Michael M. Mihm**, *Judge*.

ARGUED FEBRUARY 24, 2012—DECIDED JANUARY 31, 2013

Before MANION and ROVNER, *Circuit Judges*, and
COLEMAN, *District Judge*.[*]

---

[*] Hon. Sharon Johnson Coleman of the Northern District of
Illinois, sitting by designation.

COLEMAN, *District Judge.*  Julie McArdle filed a complaint alleging that she was terminated from her employment as a middle school principal to prevent her from publicizing misconduct by her predecessor, Mary Davis, who was also her immediate superior. Her complaint included First Amendment claims against Davis and her employer, Peoria School District 150, and Illinois law claims against the district for breach of contract and Davis for tortious interference with her employment contract. The district court granted summary judgment for the district and Davis on all counts, and McArdle appeals. We affirm.

## I. Background

McArdle was engaged as principal of Lindbergh Middle School in Peoria, Illinois in August 2008. Her employment contract extended for two years, but allowed the school district to terminate her after one year with payment of severance. Lindbergh's prior principal, Mary Davis, served as the district's Academic Officer, a position that made her McArdle's superior. According to McArdle, she began to discover irregularities in prior practices at Lindbergh shortly after she came to the school. These irregularities included Davis' use of school funds and a school credit card for personal purposes; her direction of payment to a student teacher in violation of district policy against such payments; and her circumvention of rules regarding admission procedures for nonresident students. McArdle alleges that she questioned Davis about some of these practices and received evasive responses.

Davis put McArdle on a performance improvement plan in February 2009. McArdle asserts that Davis cited parental complaints as part of the reason for the performance warning, but would not identify those who complained. On April 21, 2009, Tom Broderick, the district's human resources director, informed McArdle that the district's board would soon be considering early termination of her contract. On April 23, McArdle consulted an attorney and filed a police report which accused Davis of theft of school funds. She also sent a letter to Broderick, district superintendent Ken Hinton, and the vice president of the district's board which listed improprieties by Davis as Lindbergh principal and in her subsequent position.

At an April 27, 2009 meeting of the district's board, Hinton recommended that McArdle's contract be terminated at the end of its first year. His recommendation was supported by a presentation from Davis. Davis was excused from the meeting, and the board then discussed McArdle's allegations of impropriety against her. Hinton told the board that he thought McArdle was not a good fit at Lindbergh, and that the school was declining as a result. The board voted 4-1 to terminate McArdle's contract at the end of the 2008-09 school year. Davis was later prosecuted for theft of the school's funds.

McArdle contends that Davis orchestrated her termination to prevent her from revealing the improprieties she discovered. She argues that Hinton relied on Davis' input and that his recommendation to the district board

was influenced by Davis' improper motive. McArdle claims that Davis and the district both violated the First Amendment in acting upon that motive. She also claims that the district breached her employment contract and that Davis tortiously interfered with that contract. The district court granted summary judgment motions by the district and Davis on all of McArdle's claims.

## II. First Amendment Claims

We review a district court's grant of a motion for summary judgment de novo. *Goodman v. National Security Agency, Inc.,* 621 F.3d 651, 653 (7th Cir. 2010). In assessing the viability of a public employee's First Amendment claims, we must make a threshold determination as to whether the speech that allegedly motivated the employer's adverse action was protected by the Constitution. *Chaklos v. Stevens,* 560 F.3d 705, 711-12 (7th Cir. 2009). The inquiry into the protected status of speech is one of law, not fact. *Spiegla v. Hull,* 481 F.3d 961, 965 (7th Cir. 2007). In order for a public employee to raise a successful First Amendment claim for her employer's restriction of her speech, the speech must be in her capacity as a private citizen and not as an employee. *Renken v. Gregory,* 541 F.3d 769, 773 (7th Cir. 2008). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421

(2006). The Supreme Court has noted that protection of a government employee's exposure of misconduct involving his workplace is more properly provided by whistleblower protection laws and labor codes. *Id.* at 425.

McArdle argues that oversight of Davis' practices was neither required of her by Illinois law nor part of her job duties, and that these facts establish that her comments on those practices were not made as an employee. However, the question of whether speech is made "pursuant to" a public employee's duties is not answered by mere reference to the definitions of the speaker's legal obligations or job description. This court has held that a public employee's commentary about misconduct affecting an area within her responsibility is considered speech as an employee even where investigating and reporting misconduct is not included in her job description or routine duties. *Vose v. Kliment,* 506 F.3d 565, 570-71 (7th Cir. 2007). Similarly, an educator's criticism of his superior's use of grant funds provided to their department is speech as an employee, not a private citizen. *Renken v. Gregory,* 541 F.3d 769, 774 (7th Cir. 2008).

The principles that controlled in *Vose* and *Renken* are equally applicable here. Lindbergh's reputation, its adherence to district policies, and its finances were all matters within McArdle's oversight as the school's principal, and were all allegedly impacted by Davis' misconduct. In reporting on that alleged misconduct, McArdle spoke about matters that directly affected her area of responsibility. We conclude that McArdle's reporting of that misconduct was speech as a public

employee, and was not shielded from her employer's response by the First Amendment. Because Davis' recommendation was consistent with the district's ultimate action, the conclusion that McArdle's speech was unprotected as to the district is also applicable to Davis. *Abcarian v. McDonald,* 617 F.3d 931, 936-37 (7th Cir. 2010). McArdle claims that there are unresolved issues of fact regarding the motives of Davis and the district board, but since her speech was unprotected, her constitutional claims fail, and questions as to the defendants' motives are not material. Summary judgment was properly granted to defendants on McArdle's First Amendment claims.

## III.  Breach of Contract and Tortious Interference Claims

McArdle also alleges that the district breached her contract and that Davis induced this breach. Recognizing that the early termination of her employment, with severance, was permissible under the contract, she argues that the district's action under the influence of Davis' improper motive was a breach of the covenant of good faith and fair dealing implied to all contracts by Illinois law.

The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action. *Voyles v. Sandia Mortgage Corp.,* 196 Ill. 2d 288, 295 (2001). Nor does it permit a party to enforce an obligation not present in the contract. *Northern Trust Co. v. VIII South Michigan Associates,* 276 Ill. App. 3d 355, 367 (1st Dist.

1995). Since McArdle's contract allowed the district to terminate her for whatever reason after one year as long as it paid her for the remaining year, the implied covenant of good faith cannot create liability for the district's exercise of that right.

One of the essential elements of a tortious contract interference claim under Illinois law is a breach of the plaintiff's contract. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill. 2d 145, 154-55 (1989). The district's termination of McArdle's contract with payment of severance was not a breach, and her claim against Davis for tortious interference therefore fails.

## IV. Conclusion

The district court's grant of summary judgment for Peoria School District 150 and Mary Davis is affirmed.