In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1599

LAURA J. HATCHER,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF SOUTHERN
ILLINOIS UNIVERSITY, and
KIMBERLY KEMPF-LEONARD,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cv-00407 — **Nancy J. Rosenstengel**, *Judge.*

ARGUED NOVEMBER 30, 2015 — DECIDED JULY 14, 2016

Before ROVNER and WILLIAMS, *Circuit Judges*, and SHAH,
*District Judge*.*

WILLIAMS, *Circuit Judge*. Dr. Laura Hatcher was denied tenure by Southern Illinois University (SIU), and claims that it was because she is a woman, assisted a student in reporting

_____

* Of the Northern District of Illinois, sitting by designation.

an incident of sexual harassment by an SIU faculty member, and filed a charge against SIU with the Equal Employment Opportunity Commission. SIU responds that it denied Dr. Hatcher tenure because she produced insufficient scholarship. We agree with the district court that Dr. Hatcher did not produce evidence from which a jury could conclude that SIU was lying about its reason for denying her tenure. We also agree that she was not engaging in speech protected under Title VII or by the First Amendment when she assisted the student with the sexual harassment report. But because her complaint stated a plausible claim of retaliation under Title VII for filing a charge with the EEOC, we reverse and remand the dismissal of that claim.

## I. BACKGROUND

In July 2006, SIU hired Dr. Hatcher as a non-tenured assistant professor in the political science department of the College of Liberal Arts (COLA). Dr. Hatcher was up for tenure and promotion to associate professor in September 2011. SIU denied Dr. Hatcher tenure in March 2012, and shortly after terminated her contract.

Like at many universities, reviewing candidates for tenure at SIU involves a multi-level process. Candidates are evaluated first by an external review committee, second by the tenured faculty and chairperson of their respective departments, third by the COLA promotion and tenure committee consisting of 10 tenured faculty members across departments, fourth by the dean of the COLA, and finally by the provost and vice chancellor of SIU. At each step, the decision-makers consider the candidate's scholarship, teaching, and service.

About a year before she was up for tenure, Dr. Hatcher assisted a graduate student in the political science department in making a complaint to SIU about a faculty member who the student claimed was sexually harassing her. Dr. Hatcher testified that she believed she was required to help the student make the report based on Dr. Hatcher's job description.

Before submitting her tenure dossier, Dr. Hatcher received positive annual evaluations. The evaluations from her external reviewers, which were made a part of her dossier, all recommended her for tenure. In reviewing her tenure dossier, the political science department voted 4-2 in favor of promotion and tenure for Dr. Hatcher. In light of that vote, the department chair, Roger Clinton, recommended that Dr. Hatcher receive tenure and promotion. At the next step of the process, the COLA committee voted 5-4 in favor of tenure and 5-4 against promotion. The chair of the COLA committee wrote in his letter to the dean of the COLA, Kimberly Kempf-Leonard, that the COLA committee recognized Dr. Hatcher's success in teaching and service, but was concerned about her lack of academic publications in prestigious political science journals. So the COLA committee recommended that Dr. Hatcher receive tenure, but not promotion.

After receiving the COLA committee's recommendation, Dean Kempf-Leonard made her own independent review. In November 2011, Dean Kempf-Leonard sent a letter to the provost, John Nicklow, in which she wrote that while it was a difficult decision, Dr. Hatcher "has not demonstrated excellence in research" and recommended that Dr. Hatcher receive neither tenure nor promotion. Dean Kempf-Leonard found that "Dr. Hatcher has a lack of publications in both high-profile venues and a lack of publications in mainstream political

science venues." However, Dean Kempf-Leonard also noted that Dr. Hatcher's work was of high quality. After reviewing her tenure file, Provost Nicklow also noted Dr. Hatcher's lack of peer-reviewed publications, and recommended against awarding her both tenure and promotion.

During the same tenure cycle, two male professors in Dr. Hatcher's department, Roudy Hildreth and Stephen Bloom, were also considered for tenure and promotion. The political science department voted 6-0 in favor of promotion and tenure for Dr. Hildreth. Only 3 voted in favor of promotion and tenure for Dr. Bloom, 1 voted against tenure, and 2 members abstained. The COLA Committee voted 10-0 in favor of tenure and promotion for Dr. Bloom, and 10-0 in favor of tenure and 9-1 in favor of promotion for Dr. Hildreth. Dean Kempf-Leonard recommended tenure and promotion for both male candidates, and the provost and vice chancellor adopted those recommendations.

In April 2012, Dr. Hatcher filed a non-contractual grievance with the University's Judicial Review Board (JRB). The JRB is limited to procedural review of tenure decisions. It found that Provost Nicklow did not sufficiently outline the reasons for denying tenure and promotion to Dr. Hatcher. As a remedy, it recommended that Dr. Hatcher be awarded promotion and tenure. In reviewing the grievance proceedings, Chancellor Rita Cheng agreed that the provost should have been more specific in his denial, but declined to reverse Dr. Hatcher's denial of tenure. Instead, she ordered Provost Nicklow to rewrite his denial letter in greater detail, which he did. Chancellor Cheng issued her final decision denying tenure to Dr. Hatcher on November 27, 2012.

In the meantime, on October 3, 2012, Dr. Hatcher filed a charge of discrimination with the Equal Employment Opportunity Commission, claiming that she was unfairly denied promotion because of her gender. After the denial became final, in April 2013, Dr. Hatcher filed a lawsuit against SIU, Chancellor Cheng, and Dean Kempf-Leonard, claiming discrimination and retaliation. The district court granted the defendants' motion to dismiss Dr. Hatcher's Title VII retaliation and First Amendment claims. Her remaining claim of gender discrimination was dismissed at summary judgment. Dr. Hatcher now appeals.

## II. ANALYSIS

On appeal, Dr. Hatcher argues that the district court erred in granting the defendants' motion to dismiss her Title VII and 42 U.S.C. § 1983 retaliation claims, abused its discretion in denying her motion to reconsider its dismissal of those claims, and erred in granting summary judgment for her Title VII gender discrimination claim. We review the district court's dismissal of Dr. Hatcher's Title VII and § 1983 claims *de novo*. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). We review the denial of Dr. Hatcher's motion to reconsider under an abuse of discretion standard. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). We review the district court's grant of summary judgment *de novo* and construe all the evidence in the light most favorable to Dr. Hatcher. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

### A. Dismissal of Retaliation Claims

To survive a motion to dismiss, a claim must be plausible rather than merely conceivable or speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

556 (2007). The plaintiff must include enough details about the subject matter of a case to present a story that holds together, but the proper question to ask is "could these things have happened, not *did* they happen." *Carlson v. CSX Transp., Inc.* 758 F.3d 819, 826–27 (7th Cir. 2014) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)).

### 1. Title VII Retaliation Claim for Filing EEOC Charge Was Sufficiently Pled

To state a claim for Title VII retaliation, a plaintiff must plead that she engaged in a statutorily protected activity and was subjected to materially adverse actions as a result of that activity. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). Title VII specifically prohibits retaliation for filing a charge with the EEOC. 42 U.S.C. § 2000e-3(a).

Dr. Hatcher argues on appeal that the district court improperly dismissed her Title VII retaliation claims. She says her complaint makes out two plausible claims of retaliation: first, that she was denied tenure because she assisted a graduate student in making a report of sexual harassment, and second, that she was denied tenure because she filed a charge of employment discrimination against SIU with the EEOC. The defendants respond that assisting a graduate student in making a complaint of sexual harassment is not statutorily protected activity under Title VII. They further argue that because Dr. Hatcher filed her charge with the EEOC long after Dean Kempf-Leonard and Provost Nicklow made their recommendations to deny her tenure, Dr. Hatcher cannot establish causation between a protected activity and a materially adverse action by SIU. Finally, they claim that the district court was correct to dismiss the retaliation count because Dr. Hatcher failed to specifically plead that Chancellor Cheng's

final tenure decision was retaliation for filing a charge at the EEOC.

While Dr. Hatcher's complaint mentions in a few places that she reported sexual harassment internally on behalf of a student and discussed shortcomings of the sexual harassment policy, there is no allegation in the complaint itself that the student was an employee of SIU. That omission is crucial for Title VII purposes. Under Title VII, an employee must identify an unlawful *employment* practice that is prohibited by that statute. 42 U.S.C. § 2000r-3(a). Without this essential information, there is no suggestion in the complaint that in supporting the student, Dr. Hatcher was opposing unlawful *employment* discrimination, and therefore engaging in a statutorily protected activity.[1] *See Roots P'ship v. Lands' End*, 965 F.2d 1411, 1417 (7th Cir. 1992) (holding dismissal proper where complaint fails to allege an essential element of plaintiff's claim.). So the district court properly dismissed that claim.

More difficult is the issue of whether Dr. Hatcher properly pled retaliation on the basis of her own filing of an EEOC charge. We have held that a plaintiff must specifically identify the protected activity that she alleges was the source of retaliation. *Carlson v. CSX Transp., Inc*. 758 F.3d 819, 828 (7th Cir. 2014). But the Supreme Court instructed in *Swierkiewicz v. Sorema* that Title VII is not subject to a heightened pleading standard. 534 U.S. 506, 513–15 (2002). Rather, all that is required is a short and plain statement showing the pleader is

---

[1] We have not ruled on whether allegations of retaliation against faculty who support students in bringing sexual harassment claims to university officials could state a claim for retaliation under Title IX, but Dr. Hatcher does not make this argument so we do not address it here.

entitled to relief. *Id*. *Swierkiewicz* survived the *Twombly* and *Iqbal* standard of pleading. *Luevano v. Wal-Mart Stores*, 722 F.3d 1014, 1028 (7th Cir. 2013); *see also Swanson*, 614 F.3d at 404. We have also noted that requiring pleading of unknown details before discovery would improperly deny plaintiffs the opportunity to prove their claims. *EEOC v. Cocentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007).

Dr. Hatcher made the following relevant factual allegations in her complaint: (1) she filed her EEOC charge asserting discrimination on the basis of gender on October 3, 2012, (2) during his testimony at the JRB hearing on October 12, 2012, Provost Nicklow told the panel that Dr. Hatcher had filed a charge of discrimination, and (3) on November 27, 2012, Chancellor Cheng declined the JRB's recommendation to grant Dr. Hatcher tenure, and instead denied her tenure. After making these general factual allegations, the complaint contains a retaliation count which simply states that "by the conduct described above," SIU retaliated against Dr. Hatcher for engaging in a statutorily protected activity. To be sure, the count could have more clearly incorporated the above factual allegations. But it is hard to conclude that the complaint was so poorly drafted that SIU did not receive notice of facts which supported Dr. Hatcher's claim that SIU retaliated against her, and "the intent of the liberal notice pleading system is to ensure that claims are determined on their merits rather than through missteps in pleading." *Id*. at 779. And SIU could have asked for a more definite statement if it truly did not understand the nature of the allegations against it. *See* Fed. R. Civ. P. 12(e).

Dr. Hatcher's complaint specified a protected activity (filing a charge at the EEOC for gender discrimination) and an

adverse employment action (denial of tenure). It further pled that SIU retaliated against her for engaging in a protected activity. The short timing between the filing of the charge and Chancellor Cheng's decision, the fact that the Chancellor declined to act on the JRB's recommendation, and a lack of other allegations in the complaint which rule out retaliation as a cause for the decision, all take Dr. Hatcher's retaliation claim from the realm of the possible into the realm of plausible. *See Twombly*, 550 U.S. at 556. While Chancellor Cheng may very well have made her decision without any retaliatory motive, this is precisely the type of factual question which entitles a plaintiff to discovery. So we find that the district court erred in dismissing the complaint for failure to state a claim of Title VII retaliation, and remand that claim for further proceedings.

### 2. First Amendment Retaliation Claim Properly Dismissed

Dr. Hatcher next argues that the district court erred in dismissing her claim that SIU retaliated against her for engaging in protected speech under the First Amendment by speaking on behalf of a student about sexual harassment. SIU responds that Dr. Hatcher's speech was not protected under the First Amendment because she made it pursuant to her employment.

In order for a public employee to make out a claim of First Amendment retaliation against a government employer, the employee must first establish that he or she was engaging in protected speech. "The threshold inquiry is whether the employee was speaking as a citizen; only then do we inquire into the content of the speech." *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). When a public employee speaks on matters

pursuant to employment duties, that speech is not protected under the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006). This is because "restricting speech that owes its existence to a public employee's professional responsibilities does not infringe on any liberties the employee might have enjoyed as a private citizen." *Id*. A mere speculative possibility that an employee speaks as a citizen is no longer enough to satisfy federal notice pleading requirements. *Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010). So Dr. Hatcher needed to plead specific facts that plausibly suggested her speech was *not* made pursuant to her faculty role, but rather was made in her capacity as a private citizen.

Dr. Hatcher argues she spoke as a citizen because of the absence of mandatory reporting requirements for her position. But "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties*." Garcetti*, 547 U.S. at 424–25. We instead take a "practical approach" to determining whether an employee's speech is pursuant to her employment*. Id.; see also McCardle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) ("the question of whether speech is 'pursuant to' a public employee's duties is not answered by mere reference to the definitions of the speaker's legal obligations or job description"); *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir. 2006) (employee speech unprotected because it contributed to formation and execution of an official policy); *cf. Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007) (statements a police officer made pursuant to deposition subpoena were not employee speech because he was not employed to give depositions).

Employees' unsolicited reports of misconduct can be difficult to view as part of their employment duties, since their employers would often prefer that they keep quiet. But we have rejected the notion that *Garcetti* applies only to speech expressly commanded by an employer. *Fairley v. Andrews*, 578 F.3d 518, 523 (7th Cir. 2009). Instead, we have repeatedly held that an employee's speech about misconduct affecting an area within her responsibility is considered pursuant to her employment even when she is not strictly required to make it. *See Vose v. Kliment*, 506 F.3d 565, 570 (7th Cir. 2007) (finding that while sergeant went "above and beyond" in reporting misconduct of detectives not under his supervision, it was not beyond his official duty to ensure security and property of his unit's operations); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008) (agency administrator had a duty to see law was administered properly, which encompassed duty to bring alleged wrongdoing within agency to relevant public authorities); *McArdle,* 705 F.3d at 754 (7th Cir. 2013) (school official speaking about predecessor and superior's misconduct was speech about matters that directly affected her area of responsibility).

Dr. Hatcher's complaint first alleges that she was a mandated reporter of sexual harassment. It goes on to allege that "Hatcher told Kempf-Leonard that female students subjected to sexual harassment came to her because she (Hatcher) was the senior female faculty in the Department." Based on these allegations, SIU filed a motion to dismiss the claim, arguing that Hatcher essentially admitted that she considered the report of sexual harassment to Dean Kempf-Leonard to be part of her faculty duties. In her response to SIU's motion to dismiss, Hatcher changed course, asserting for the first time that she *mistakenly* believed that she was a mandated reporter at

the time she discussed sexual harassment issues with Dean Kempf-Leonard, but that Dean Kempf-Leonard knew that she was not *required* to make such a report.

In *Heffernan v. City of Paterson*, decided after oral argument in this appeal, the Supreme Court ruled that the government could be liable for demoting an employee based on the employer's mistaken belief that the employee engaged in protected political activity. 136 S. Ct. 1412, 1419 (2016). Dr. Hatcher appears to make an inverted argument: SIU knew her speech was protected, and so it violated her rights, even if at the time she made the speech, *she believed* she made it in the course of her employment duties. But *Heffernan* does not apply here because beliefs about whether Dr. Hatcher was a mandated reporter do not determine whether her speech is protected.

Rather, Dr. Hatcher must provide a plausible basis for speaking as a citizen and not an employee of SIU. Her amended complaint fails to do this. She nowhere explains why she felt compelled to report the misconduct apart from the fact that she was a professor at SIU and she believed it was her job to do so. Because Dr. Hatcher's amended complaint indicates her speech was made pursuant to her faculty role, and she failed to make any factual allegations indicating otherwise, *Garcetti* bars her retaliation claim. *Abcarian*, 617 F.3d at 938.

Dr. Hatcher also argues that the district court abused its discretion by denying her motion to reconsider the dismissal of her retaliation claims. She argued in that motion that the district court should have permitted her to amend her complaint, rather than dismissing it with prejudice for failure to state a claim. Fatal to Dr. Hatcher's motion to reconsider was

her failure to explain how an amended complaint would cure the deficiencies in her original complaint. *Gonzalez-Koeneke*, 791 F.3d at 808. Even on appeal, Dr. Hatcher has not explained how she would plead additional facts that demonstrate that SIU had any reason to believe she was speaking as a citizen, and not an employee, when she reported sexual misconduct and noted shortcomings in the harassment policy. And she also failed to attach an amended complaint or otherwise clarify her student's employment status with SIU for Title VII purposes. The district court did not abuse its discretion.

## B. Summary Judgment Proper for Title VII Gender Discrimination Claim

Finally, Dr. Hatcher argues that the district court erred in granting summary judgment to SIU on her Title VII claim of gender discrimination. A plaintiff can survive summary judgment on a Title VII gender discrimination claim by providing either direct or indirect evidence of discrimination. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). Under the direct method, a plaintiff can provide a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by a decision-maker. *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006). Such circumstantial evidence could include (1) suspicious timing, ambiguous statements, or comments directed at other employees in the protected group, (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically received better treatment, or (3) evidence that the employer's stated reason for the differential treatment is unworthy of belief. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720–21 (7th Cir. 2005). If the plaintiff can "assemble from various scraps of circumstantial evidence enough to allow the

trier of fact to conclude discrimination occurred, then summary judgment for the defendant is not appropriate." *Muhammad v. Caterpillar, Inc.*, 767 F.3d 694, 700 (7th Cir. 2014).

Under the indirect method, an employee must show that she is a member of a protected class, she was qualified for tenure, she was denied tenure, and a similarly situated applicant outside the protected class was granted tenure. *Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007). If a plaintiff succeeds in establishing these four elements, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. And if it is able to do so, the plaintiff must then produce evidence showing that the stated reason is merely pretext for a discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To create a triable issue of pretext, a plaintiff must present evidence suggesting that her employer is dissembling. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013).

Nothing in Title VII bans outright an employer's use of subjective evaluation criteria, and differences in qualifications between job candidates, on their own, cannot be evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176, 1179 (7th Cir. 2002), *but see David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003) (clarifying that *Millbrook* is not controlling when plaintiff offers additional evidence of

discrimination). In the academic context, we have held that scholars are in the best position to make the highly subjective judgments reviewing scholarship and tenure. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005); s*ee also Namenwirth v. Bd. of Regents*, 769 F.2d 1235, 1242 (7th Cir. 1985) ("Mere qualification [for a job] depends on objective measures … but tenure requires something more; it requires the department believe that the candidate have a certain amount of promise."). We have noted that

> Because so many factors influence the tenure process and because statistical inferences of discrimination are difficult to draw when there is only a small number of observations … it can be difficult to infer the presence of an invidious influence such as the sex of a candidate merely by comparing successful and unsuccessful tenure applicants.

*Blasdel v. Northwestern Univ.*, 687 F.3d 813, 817 (7th Cir. 2012). But "faculty votes should not be permitted to camouflage discrimination, even the unconscious discrimination of well-meaning and established scholars*." Namenwirth*, 769 F.2d at 1243; *see also Novak v. Bd. of Trs.*, 777 F.3d 966, 976 (7th Cir. 2015) ("Congress did not intend that institutions of higher learning enjoy immunity from the Nation's anti-discrimination statutes.").

Dr. Hatcher argues that the evidence in her case is sufficient under both the direct and indirect methods of proof. The two methods are somewhat intertwined, because evidence that an employer's reasons for denying tenure are unworthy of belief can serve both as circumstantial evidence under the

direct method and as evidence of pretext to rebut a proffered legitimate motive under the indirect method.

To support both theories, Dr. Hatcher points to the following evidence: (1) the similarity of her publication record to male colleagues who received tenure, (2) testimony from department colleagues that she should have been promoted and was treated unfairly, (3) an email from the Executive Committee Chair of the COLA committee to Dean Kempf-Leonard stating that "Bloom and Hatcher were much more close than the vote, something is going on with the Bloom vote in the department," (4) Dr. Hatcher's contention that Dean Kempf-Leonard "cherry-picked" seemingly negative comments from external reviewers for Dr. Hatcher's tenure review, and did not do the same for her male colleagues, (5) testimony from Dean Kempf-Leonard that she ignored Dr. Hatcher's attempts to correct factual errors in her denial letter, and (6) the political science department operating paper which recommends that a tenure candidate's scholarship should be judged by the department. Dr. Hatcher argues that these facts point to a triable issue of the true motivations behind Dean Kempf-Leonard's recommendation against tenure.

The problem with Dr. Hatcher's argument is that none of the above evidence points to a lie by Dean Kempf-Leonard, or by extension, SIU, about the reason she was denied tenure. Particularly problematic for her is that Dean Kempf-Leonard's recommendation was based in large part on the findings of the COLA Committee, which Dr. Hatcher does not appear to contend were discriminatory. Dr. Hatcher's tenure vote was more divided than her comparators, so she cannot argue she was clearly better qualified for the position at issue. And while some colleagues expressed frustration and suspicion

about Dean Kempf-Leonard's decision to recommend against tenure, none provided testimony that pointed to dissembling by SIU. Their testimony is the type of subjective disagreement with a tenure decision that we have found insufficient to support a claim of discrimination.

It is possible that the dean and provost were harder on Dr. Hatcher than on her male colleagues during tenure review, and some of her colleagues seemed to think that was the case. It should not be a source of pride for SIU that Dr. Hatcher is the first woman to be considered for tenure in the political science department in almost 20 years. The subjectivity of the tenure review process can obscure bias, making it exceedingly difficult to address entrenched inequalities which not only have a negative impact on female faculty with tenure aspirations, but also on the institutions of higher learning that are deprived of their contributions. However, Title VII only permits us to go so far in addressing this problem; in order for a plaintiff to prevail at summary judgment, she cannot simply show she was treated differently. She must provide evidence that creates a material dispute over whether the reason her employer gives for the differential treatment is unworthy of belief. We see no evidence from which a reasonable jury could draw that conclusion here. So the district court did not err in granting summary judgment to SIU on the gender discrimination claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part and REMAND for proceedings consistent with this opinion.