NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2016
Decided January 12, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1707

JAY R. SCHMITT,
    *Plaintiff-Appellant*,

    *v.*

CENTRAL PROCESSING
CORPORATION and COUNTY
MATERIALS CORPORATION,
    *Defendants-Appellees*.

Appeal from the United States District
Court for the Southern District of Illinois.

No. 14-cv-01341-JPG-DGW

J. Phil Gilbert,
*Judge*.

**O R D E R**

Jay Schmitt contends that his employer fired him while retaining younger, less qualified employees, but his claim of age discrimination foundered because a questionable litigation strategy obscured the salient issue. Schmitt focused heavily on comparing himself to a newly hired, entry-level employee whom, he argued, assumed many of his previous responsibilities. The district court rejected this comparison between Schmitt and the new hire and granted summary judgment for the employer, concluding that Schmitt had failed to identify a similarly situated, younger employee who was treated more favorably. But the court ignored another comparator who *did* perform the same role as Schmitt and, despite having been on the job for only a year,

kept his position while Schmitt's was "eliminated." In our view Schmitt established a prima facie case of discrimination, and thus the real question is whether his employer's proffered reason for firing him—that the relevant comparator had a "deeper skill set" and another new hire had better industry contacts—was pretextual. Reviewing the evidence in the light most favorable to Schmitt, we conclude that he failed to introduce evidence from which a reasonable fact finder could conclude that his employer lied about its reasons for letting him go. We affirm the judgment.

## I. Background

In his brief Schmitt describes the underlying facts as "blurry." We've distilled the following narrative as the factual background necessary to resolve this case. Schmitt worked for more than 30 years at a plant in Salem, Illinois, that manufactures concrete products used to erect bridges, overpasses, and other large structures. He was the plant manager when the facility was purchased out of a receivership in late 2009 by the defendant County Materials Corporation. (Central Processing Corporation, the other defendant, provides labor to County Materials and became Schmitt's employer after the acquisition. We will refer to the defendants collectively as "County Materials.") Scott Boma, regional manager for County Materials, hired Schmitt and other "key personnel" to continue running the plant, but Boma soon decided that Schmitt's management style did not include the "strong sense of urgency" he desired.

Boma did not fire Schmitt but instead gave him a job in commercial sales. Employees in commercial sales were primarily responsible for bidding on contracts to supply concrete products needed by construction companies or governmental agencies. Rich Cooper and Preston Moore, two other employees at the Salem plant, worked alongside Schmitt in commercial sales, and a third man, Pete Tomaras, performed that job out of a plant in Champaign, Illinois. According to Boma, though, the four worked on "very different" projects. Schmitt was responsible for bidding on jobs in southern Illinois and Missouri requiring only simple "I-beams" and "box beams," jobs that Boma derides as "cookie-cutter." In contrast, Cooper focused on "special or unique projects" like railroad bridges; Moore primarily bid on "complex bridge projects, such as arched bridges and design-builds"; and Tomaras sold "some other products in addition to" those manufactured in Salem. Schmitt disagrees with characterizing his projects as "cookie-cutter" and avers that he is fully competent to estimate all types of projects using materials made by the Salem plant, yet he admits that, in fact, all of the projects he bid on were bridges using only I-beams and box beams.

Meanwhile, shortly after the Salem plant was acquired, Boma also hired Lyndell Borcherding, another former employee, to serve as "project coordinator." Employees holding this hourly position (salespeople are salaried) support the commercial sales staff by "perform[ing] the administrative tasks necessary to take the projects successfully bid on … and get them ready for production." Schmitt had performed these tasks for three or four months after Boma hired (and demoted) him, but his "responsibilities shifted to an emphasis on sales and estimating" once Borcherding took over as project coordinator. Commercial salespeople do occasionally perform some of the post-sales supporting tasks typically handled by the project coordinator, but the project coordinator does not bid or estimate projects.

Schmitt did not always have enough work to stay busy on a full-time basis, and he does not dispute that Boma spoke with him several times about ways he might stay busier. Then in the summer of 2011, according to Schmitt, Boma asked him when he planned to retire, which surprised him because he was not then contemplating retirement. That same fall, Boma placed Schmitt on furlough for the winter (a slow period for the industry) to reduce operating costs. Schmitt was surprised by this too because no one else in the plant was placed on furlough, but he did not question Boma's choice or complain. He returned in the spring, but Boma again furloughed him during the winter of 2012–2013 while business was slow. Again, Schmitt did not complain, although he was the only salaried employee who was furloughed.

Moore, one of the other three project managers, resigned at roughly the same time that Schmitt returned from furlough in the spring of 2013. Boma promoted Borcherding from project coordinator to fill Moore's position in commercial sales. There is no dispute that Borcherding had little to no experience either in sales or in bidding on materials contracts. Neither is there any dispute that Schmitt, having far more experience, could have handled the work Moore was performing. At 37 years old, the newly promoted Borcherding was substantially younger than his colleagues—Schmitt was then 58, and both Cooper and Tomaras were 52 years old.

Schmitt and Borcherding split between themselves the duties of the project coordinator while that position was vacant, but at the same time, both men also performed their jobs in commercial sales by bidding on projects. Then in July 2013 Boma hired Christopher Everette, who was then 33 years old (and had no experience in the industry), to fill Borcherding's old job of project coordinator. Once Everette was trained (the parties dispute who trained him, but the answer is irrelevant), Everette performed all of the supporting administrative duties that had been Borcherding's responsibility,

some of which Schmitt had performed for several months after Borcherding's promotion. At this time Schmitt was being paid $72,000 annually; Borcherding earned $51,000 per year; and Everette was paid $17 per hour.

Boma furloughed Schmitt again in October 2013. That same month, however, Boma hired 57-year-old Andy Keenan as a fifth commercial salesperson after the acquisition of a northern Illinois plant that manufactures products similar to those made in Salem. Keenan, who had been working for a number of years at the newly acquired plant, sold the same bridge beams as Schmitt, but in Boma's estimation had greater customer contacts in northern Illinois, "an important area of potential growth." Schmitt conceded, consistently with Boma's assertion, that he did not estimate bridges in the Chicagoland area. During the winter of 2013, Borcherding and Keenan handled Schmitt's estimates, all of which were located in southern Illinois and Missouri.

Boma decided in the spring of 2014 that there wasn't sufficient work to justify five commercial salespeople and that since Keenan and Schmitt sold the same types of products, he would "consolidate their responsibilities into a single position and eliminate the other position in order to save costs." Boma considered Keenan to be more valuable because he had more contacts in northern Illinois. Boma says he also considered whether Cooper or Borcherding (the other Salem salespeople) should be let go, but decided not to because they "had a deeper skill set than Schmitt, exhibited a greater attention to detail than Schmitt, and had experience handling special and complex projects whereas Schmitt's experience was limited to the more basic bridge beam jobs."

Rather than bring Schmitt back from furlough in the spring, Boma fired him effective April 1, 2014, when he was 59 years old. At the time Keenan was 57, Cooper and Tomaras both were 53, and Borcherding was 38. Schmitt responded by asking Boma not why Borcherding was being retained but instead why he was being fired instead of 33-year-old Everette, the new project coordinator. Boma answered that Schmitt and Everette held different jobs and asked whether Schmitt wanted Everette's position. Schmitt replied that he did not (he later testified that he did not view this as a serious offer considering that Everette earned roughly half of his salary). Boma testified that after Schmitt was last placed on furlough in the fall of 2013, never to return, Keenan bid 83% of the jobs that would have gone to Schmitt while Borcherding handled the remaining 17%.

Schmitt filed this suit alleging that he was fired on the basis of age in violation of the Age Discrimination in Employment Act. *See* 29 U.S.C. § 623(a)(1). Schmitt contended

that he had been terminated from the job of project *coordinator*—not commercial sales—and identified Everette as the substantially younger employee who had replaced him.

But this theory changed during litigation. At summary judgment the defendants contended that Schmitt had been a salaried member of the commercial sales staff, that he had performed the entry-level duties of project coordinator only temporarily while that job was vacant, and that it was the 57-year-old Keenan, not Everette, who had replaced him in sales. In response Schmitt modified his theory and argued that both Borcherding and Everette had absorbed his duties. He pointed to an e-mail that Boma had sent shortly after he was fired directing that another employee take some of Everette's administrative tasks so that Everette, not Keenan, could assume Borcherding's "more basic … duties." And, Schmitt contended, it was not until 10 weeks after he was fired (and 2 weeks after he requested his personnel file) that any of his work was given to Keenan. This "suspicious timing," he insisted, could reasonably be inferred as "track covering … to obfuscate the discrimination."

The defendants in reply pointed out that Boma's e-mail concerned only staffing at the Salem plant, meaning that since Keenan worked out of a different plant, his assumption of Schmitt's work wasn't relevant. They also responded to Schmitt's "conspiracy theory" about the timing of Keenan's work assignments, labeling as "absurd" the suggestion that "Boma's decision to assign more work to a 57-year old employee proves a bias against older workers."

In granting summary judgment for the defendants, the district court briefly discussed Schmitt's comparison of his own situation to Borcherding's, but discounted the latter's promotion as irrelevant because it had occurred more than a year before Schmitt was fired. The court focused on whether under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Everette qualifies as a substantially younger employee who was treated more favorably. Everette is not a proper comparator, the court concluded, because his entry-level role as project coordinator is not sufficiently similar to Schmitt's job in commercial sales. For that reason, the court opined, Schmitt's evidence does not establish a prima facie case of age discrimination. And even if it did, the court added, Schmitt's claim would fail because when deposed he had conceded that he lacked specific evidence that Boma lied. The court did not go on to consider whether Schmitt had produced enough evidence for a jury to infer that Boma's explanation for firing him was pretextual.

## II. Discussion

We recently jettisoned the long-standing practice of distinguishing between "direct" and "indirect" evidence in analyzing discrimination claims and instructed instead that courts simply ask if a reasonable jury could find from *all* available evidence that discrimination was the but-for cause of the challenged employment action. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763–66 (7th Cir. 2016); *see also Williams v. Office of the Chief Judge of Cook Cnty.*, 839 F.3d 617, 626 (7th Cir. 2016) (explaining that plaintiff defeats summary judgment if reasonable fact finder could determine that discriminatory motive caused termination). Schmitt filed his appellate brief a month before *Ortiz* was decided, and his analysis tracks the discarded framework. The essence of his argument, however, is that the district court failed to construe the evidence in the light most favorable to him and overlooked disputed material facts about the duties he was performing shortly before the final furlough. In other words, Schmitt continues to anchor his argument on the fact that for several months prior to being furloughed in late 2013, he was performing some duties of the project coordinator in addition to his sales work, and thus, he asserts, a material question of fact exists about his actual job duties. Schmitt continues to insist that Boma intended 38-year-old Borcherding and 33-year-old Everette to absorb his duties, and he claims (without identifying any proof in the record) that the assignment of his bidding work to Keenan only after he requested his personnel file was a ruse to conceal discrimination "by using Keenan's age as a shield."

Schmitt misses the mark by insisting on comparing himself to Everette. The parties agree that Schmitt was within the protected class for age discrimination, was performing his sales job satisfactorily, and suffered an adverse action, so to establish a prima facie case, he was required only to identify a similarly situated, younger employee who was treated more favorably. *See Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016); *see also Ortiz*, 834 F.3d at 766 (explaining that rejection of direct and indirect methods of proof does not affect the burden-shifting framework of *McDonnell Douglas*). A similarly situated employee "is one whose performance, qualifications, and conduct are comparable in all material respects," *Boss*, 816 F.3d at 917, and Everette simply does not fit this definition. The defendants acknowledge that Schmitt temporarily performed some duties of the project coordinator while that position was vacant and Everette was in training to fill the role. But that didn't change the essential nature of Schmitt's duties from that of commercial salesperson. At his deposition Schmitt acknowledged that he primarily estimated and bid on bridge projects, and it is undisputed that Everette, the new project coordinator, did not bid projects. And Everette was hired at $17 per hour for a job that requires no prior experience in the industry while Schmitt was paid $72,000

annually and had extensive experience. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 322 (7th Cir. 2003) (rejecting as a comparator a younger employee with a substantially lower salary and less experience).

On the other hand, though Everette is not a proper comparator, Borcherding is. Thus, the district court was mistaken in saying that Schmitt had not established a prima facie case. Boma fired Schmitt while retaining Borcherding—citing the younger man's "deeper skill set" and Schmitt's exclusive focus on bidding "cookie-cutter" jobs. Yet Borcherding's promotion to commercial sales had occurred only a year earlier, and Boma has never explained how in that short time someone with no prior experience bidding projects could have developed a deeper skill set than Schmitt. Schmitt, after all, had more than 30 years' experience in the industry, and as plant manager before the change in ownership had supervised all of the commercial salespeople at the Salem facility. He has met his burden to establish a prima facie claim of discrimination.

So the outcome here turns on whether Schmitt produced sufficient evidence to show that Boma's explanation for firing him was pretextual, meaning dishonest rather than simply foolish or unreasonable. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016); *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 541 (7th Cir. 2016). Yet Schmitt does not even *recognize* the significance of this question; his lawyer continues to focus so heavily on disputing Schmitt's job duties that he barely addresses pretext. In the two pages of his appellate brief devoted to that issue, Schmitt characterizes as "evidence" of pretext (1) the timing of Boma's personnel changes during the three years before he was fired and (2) the fact that there were four salespeople in early 2013 and still four in April 2014 after he was fired. Schmitt reasons that a jury could infer from the personnel changes that Boma "had been plotting" to fire him since he asked in 2011 about his retirement plans. That inference rests on rank speculation and is not reasonable. And Schmitt's math is wrong. He claims that Boma lied about needing to reduce the sales staff because there were four salespeople both before and after he was fired. But the addition of the 57-year-old Keenan in October 2014 brought the number to *five*. At oral argument Schmitt could have tried to point us to actual evidence of pretext, but his lawyer failed even to *mention* the subject, instead spending his time on the futile assertion that Schmitt's job duties were unclear.

At summary judgment Schmitt needed to produce evidence that challenged Boma's explanation that Borcherding, the only true comparator, had a deeper skill set and bid more complicated projects than Schmitt could handle. Schmitt might have attacked Boma's reason for firing him by putting forth evidence that he could (or did)

perform the "special projects" Borcherding handled, that he had greater skills than Borcherding, or even by asserting that he had tried to take on these tasks when Moore resigned. He could have subpoenaed records to support his assertion that Keenan, the newly hired salesperson who is only two years his junior, did not begin to handle Schmitt's work until after he put Boma on notice of his intent to sue (demonstrating, potentially, that the defendants were attempting to cover up their pretextual dismissal of Schmitt). It's unclear whether Schmitt tried to gather evidence along these lines and failed because it doesn't exist, or if his attorneys simply dropped the ball. But either way his failure to do any of this means that he lacks any real evidence that would allow a reasonable jury to conclude that Boma lied. The fact that Borcherding was retained—despite having substantially less time on the job—while Schmitt was fired might seem harsh, but ultimately Schmitt fell short of meeting his burden to prove that discrimination motivated the decision.

The judgment of the district court is AFFIRMED.