NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 5, 2022[*]
Decided November 15, 2022

Before

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2910

| | |
|---|---|
| SABINA LEIGH BURTON,<br>*Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:17-cv-00036-jdp |
| BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, et al.,<br>*Defendants-Appellees*. | **James D. Peterson**,<br>*Chief Judge*. |

## O R D E R

Plaintiff Sabina Burton was fired in 2018 from her position as a tenured associate professor of criminal justice at the University of Wisconsin–Platteville. In this suit, she

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

asserts that her discharge was part of a years-long campaign of retaliation against her for reporting sexual harassment, criticizing the university's handling of that case, and exposing what she says has been corruption within her department and the administration. A prior lawsuit, in which she raised discrimination and retaliation claims against the university for events through 2015, ended in affirmance of summary judgment for the defendants. *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 696 (7th Cir. 2017). This suit addresses the events since 2016 that ended with Burton's firing. The district court dismissed certain claims at the pleading stage and later granted the defendants' motion for summary judgment on her remaining claims, including the ones she challenges here: that the university retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and the First Amendment. We affirm.

## Background

We recount the facts in the light most favorable to Burton, the party opposing summary judgment. *Henry v. Hulett*, 969 F.3d 769, 776 (7th Cir. 2020) (en banc). Burton traces the origin of the dispute to 2012, when she reported to Elizabeth Throop, then-dean of the university's College of Liberal Arts and Education, that a colleague had sexually harassed a student. Burton's colleague was reprimanded and his contract was not renewed, but he was allowed to stay in his position through the end of the following school year. Burton regarded the university's response as inadequate. She embarked on a campaign to draw attention to the "sexism and corruption" among the university's leadership. Her relationship with many colleagues and administrators soured. In 2014 she sued the university for discrimination and retaliation. See 42 U.S.C. §§ 2000e-2 & 2000e-3; 20 U.S.C. § 1681(a). The district court concluded that Burton adduced no evidence to support her claims and entered summary judgment for the defendants. We affirmed. *Burton I*, 851 F.3d at 696.

Meanwhile, Burton continued to express dissatisfaction with the university's handling of her grievances. She secretly recorded faculty meetings and posted the recordings or transcripts of them to a website created by her husband to publicize her efforts. She wrote a letter to the governor complaining that the university's "very corrupt, liberal administration" was "mercilessly harassing employees and students." She wrote to the Wisconsin attorney general asking for an investigation to be opened. And she filed grievances against three professors, one of whom she says made a "death threat" by pretending his finger was a gun and mimicking shooting at her, purportedly in retaliation for her activism.

In late 2016, Throop (by this time, serving as interim provost) and Dean Melissa Gormley drafted a complaint under chapter 4 of Wisconsin's administrative code to begin formal dismissal proceedings against Burton. A chapter 4 complaint is the vehicle for firing tenured faculty members in the University of Wisconsin system. Wis. Admin. Code § 4.02. Throop and Gormley submitted their complaint to Chancellor Dennis Shields. The complaint listed a series of grievances against Burton but focused on two charges: (1) her disclosure of private information by posting recordings of faculty meetings online, including discussions of tenure, salary, and professor reviews; and (2) her repeated episodes of disrespectful, harassing, and intimidating behavior toward colleagues, despite being warned in two formal "letters of direction" to desist. Shields investigated the complaint and found that there was just cause to dismiss Burton from her tenured faculty position. After further administrative steps (a hearing before a faculty committee, review by the University of Wisconsin President, and an appeal to a Board of Regents subcommittee), the Board of Regents issued a decision in June 2018, revoking her tenure and firing her.

Burton then petitioned for review in a Wisconsin court. See Wis. Stat. ch. 227. The circuit court upheld the Board's decision, and the appellate court affirmed. *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 966 N.W.2d 270 (Wis. App. 2021).

Burton filed this federal suit before she was fired, but in the operative complaint—as relevant for this appeal—she proceeded on retaliation claims under Title VII and the First Amendment and a denial-of-due-process claim under the Fourteenth Amendment. Her due-process claim was dismissed on the pleadings. The university moved for summary judgment on the remaining claims, arguing, among other things, that most of Burton's claims were barred by claim or issue preclusion based on the state trial court's order upholding the Board of Regents' decision and Burton's previous federal case.

The district court granted the defendants' motion for summary judgment. On the Title VII retaliation claim, the court found that Burton failed to offer evidence that any of her statutorily protected activities was a but-for cause of the adverse actions she suffered. The court found that her First Amendment retaliation claims were precluded by the state trial court's decision and that they also failed on the merits because she did not offer evidence that her First Amendment-protected activities (her August 2015 letter to the governor, the complaints she lodged in August 2016 against Shields and Throop for retaliation and other such violations, and the December 2016 email to the Wisconsin attorney general's office asserting that the university was violating open records laws)

played any causal role in her discipline and discharge. The court added that it would be "grossly unfair" to allow Burton to expand her First Amendment claim beyond the three protected activities she named in her fourth amended complaint. See *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). In any event, the court wrote, her expansive view of her First Amendment rights is untenable since the rights of public employees are limited by the rules set forth in *Garcetti v. Caballos*, 547 U.S. 410 (2006), and *Hatcher v. Bd. of Trustees of Southern Illinois Univ.*, 829 F.3d 531 (7th Cir. 2016), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

## Analysis

Burton first challenges the district court's resolution of her Title VII retaliation claim. She argues that the court overlooked evidence that her protected activities were causally linked to the University's adverse actions, a required element in a Title VII retaliation claim. See *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). Burton points, for instance, to her report of the finger-gun gesture that was mentioned in the letter of direction, and to other actions—her complaints against professors and her email objecting to the letter of direction—that were cited as evidence in the formal charges that led to her dismissal.

Even if we assume that she properly developed these arguments in the district court, they lack merit. The anti-retaliation provision of Title VII prevents employers from discriminating against employees for opposing an unlawful practice. 42 U.S.C. § 2000e-3. But as the district court said, it does not "immunize[] Burton from the consequences of her grossly unprofessional conduct." Put differently, the University can lawfully discipline her for expressing a Title VII grievance in a way that egregiously violates neutral professional rules or norms. E.g., *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 794 (1973) (refusal to hire plaintiff based on participation in civil rights protests that illegally blocked traffic access to employer and locked doors of employer's building was justified, but plaintiff was entitled to try to prove stated legitimate, non-retaliatory reason was a pretext for unlawful retaliation).

We agree with the district court that Burton offered no evidence that the defendants were motivated by a retaliatory animus. See *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013). Indeed, the undisputed evidence shows that they were motivated by the manner in which she expressed her objections, including the breaches of privacy and confidentiality for university personnel matters. No evidence supports a finding that the defendants objected to the content of her objections. It is one thing to report a colleague for making a violent hand gesture; it is

another to announce publicly that you are receiving "death threats" from a colleague based solely on a hand gesture. Similarly, Burton disregards the distinction that she was punished for refusing to follow the dean's letter of direction, not for saying that it violated her rights.

Next, Burton challenges the district court's determination that her First Amendment retaliation claims are precluded by her unsuccessful state-court challenge to the Board of Regents' decision to fire her. The district court ruled that these claims were "inextricably linked" to the facts of her state-court case, and that she raised free-speech and academic-freedom arguments that the state court rejected. Burton argues that the doctrine of claim preclusion does not apply because she was prevented from joining any federal claims in her Wisconsin case, which was a petition for review of an administrative action. See Wis. Stat. ch. 227.52.

Whether Burton was prohibited from joining federal claims in her state case is not apparent on the record before us. Under Wisconsin law, all claims arising from the same transaction, or "natural grouping" of "operative facts," must be brought together, regardless of the legal theories involved. *Teske*, 928 N.W.2d at 561. We have previously recognized an exception for some Title VII claims in federal court in the wake of Wisconsin administrative proceedings. *Patzer v. Bd. of Regents of Univ. of Wisconsin Sys.*, 763 F.2d 851, 858 (7th Cir. 1985) (Wisconsin judgment affirming state administrative decision did not bar plaintiff from bringing Title VII action for supplementary remedies in federal court).

But we need not resolve the matter of claim preclusion because the district court also ruled against Burton on the merits of this claim. The court determined that Burton failed to offer evidence from which a jury could infer that her First Amendment-protected speech caused her discipline and discharge. A plaintiff seeking to establish a First Amendment retaliation claim must present evidence that her speech was at least a motivating factor in the government's actions. See *Bless v. Cook County Sheriff's Office*, 9 F.4th 565, 571 (7th Cir. 2021).

Burton challenges this ruling by asserting that the university's stated reasons for firing her were pretextual for several reasons. Most are raised for the first time on appeal, so they are not properly before us, see *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010), but we can address them quickly. Burton contends that the defendants gave shifting reasons for her dismissal, that there were some inconsistencies in the defendants' statements (she claims they often lied), and that her dismissal proceedings violated school policy in several ways. But the undisputed facts show that

defendants have consistently maintained that they fired her for publishing recordings of private meetings and acting unprofessionally. They gave different examples of this at different times, and there were minor inaccuracies in their testimony, but those minor differences are not sufficient to defeat summary judgment. *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (affirming summary judgment for officers in excessive force case; minor inconsistencies among officers' accounts of event were not sufficient to defeat summary judgment).

Burton also challenges the district court's conclusion that the scope of her free-speech rights was limited by the Supreme Court's decision in *Garcetti v. Caballos*. *Garcetti* held that public employees are protected by the First Amendment only when they speak as private citizens on a matter of public concern, not when they speak pursuant to their official responsibilities. 547 U.S. at 424–45. Burton argues that her circumstances are distinguishable because (1) her tenured professorship endowed her with expectations of academic freedom not present for most public employees; and (2) she complained about sexual-harassment policy as a private citizen on a matter of public concern.

The district court rightly explained that we concluded otherwise in *Hatcher v. Bd. of Trustees of Southern Illinois Univ.* In *Hatcher*, we applied the rule in *Garcetti* to a similar First Amendment claim by a professor at a public university and concluded that her report of sexual harassment of a student was not protected speech because it was employment-related. 829 F.3d at 539. Burton maintains that she reported the harassment on her own initiative, unlike the professor in *Hatcher* who believed she was required to report the harassment as part of her job. But as we said in *Hatcher*, even "unsolicited reports of misconduct" at the workplace that go "above and beyond" an employee's duties can be part of the job and are not protected by the First Amendment. *Id*.

Finally, in her reply brief, Burton attempts to challenge the dismissal of her due-process claim, but she forfeited this claim by not developing an argument in her initial appellate brief. See *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019) (claims not raised are forfeited); *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022) (forfeiture applies equally to pro se litigants). Burton raises several other arguments, but they also lack merit. The judgment of the district court is

AFFIRMED.